New York and Minnesota Gold Mining Co., v. Martin et al.

<hr>

## New York and Minnesota Gold Mining Co.

### *vs.*

### Alphonso Martin et al.

The complaint alleges that the defendants signed a written contract—not under seal—in these words :

"The capital stock of the New York and Minnesota Gold Mining Company is one million dollars ($1,000,000), divided into ten thousand (10,000) shares, of one hundred ($100) dollars each. Three thousand (3000) of these shares are to be sold for the present uses of the company, for the sum of fifty thousand dollars ($50,000). And we, the undersigned, do for value received, hereby mutually agree to purchase and take of the original proprietors the number of shares set against our names, at the rate of fifty thousand dollars ($50,000) for three thousand shares, and that we will pay to the Treasurer of said company the sum so affixed in such installments, and at such times, as shall be ordered by the trustees of the company. And

New York and Minnesota Gold Mining Co., v. Martin et al.

the condition of this subscription is, that two thousand (2000) shares of the capital stock shall be paid to trustees, to be held by them for the benefit of and subject to the direction of the company." That the trustees ordered at four different times installments of the subscription, of 25 per cent. each, to be paid to the Treasurer. That the defendants have only paid the first installment, and that the plaintiff has duly performed all the conditions in the agreement specified on its part to be performed. *Held*, that from these allegations it does not appear that there was any valid consideration for the defendants' promise.

A consideration must be some benefit to the defendant, or detriment to the person from whom it moves, and of some value in the eye of the law.

The placing of the stock by the plaintiff in the hands of trustees, to be held for its benefit, and subject to its direction, was no benefit to the defendants, nor was it such an injury to the plaintiff as the law considers a valuable consideration for a promise.

It is alleged that other persons than the defendants signed the agreement, but it does not appear whether they signed before or after the defendants, nor whether they signed on the inducement or consideration that the defendants would sign. *Held*, that their signature, under such circumstances, does not appear to be a consideration for the defendants' promise.

This action comes to this Court by an appeal taken by the defendants from an order of the Court of Common Pleas, Ramsey County, overruling a demurrer, which they had interposed to the plaintiff's complaint. The ground of demurrer was " that the said complaint does not state facts sufficient to constitute a cause of action." The allegations of the complaint appear in the opinion of the Court.

HENRY J. HORN for Appellants.

E. C. PALMER for Respondent.

*By the Court*—WILSON, Ch. J.—This case comes before us on an appeal from an order overruling a demurrer to the complaint. The complaint alleges: " That said plaintiff is

and was on the 24th day of February, A. D. 1866, a corporation duly organized and created under the laws. of the State of New York, by the name of the New York and Minnesota Gold Mining Company; that the object for which said corporation was formed, was the mining and smelting of gold and other ores, and the disposal of the same, and that a portion of its said business was to be conducted and carried on near Lake Vermillion, in Saint Louis county, in the State of Minnesota; that said defendants are and were on the said 24th day of February, A. D. 1866, partners in business under the firm name of A. & L. B. Martin, and on or about said day, for the purpose of carrying on the said business of said plaintiff, and accomplishing the object of its said corporation, said defendants by their firm name of A. & L. B. Martin, became subscribers to the stock of said plaintiff, by signing an agreement of which the following is a copy, viz: 'The capital stock of the New York and Minnesota Gold Mining Company is one million dollars, ($1,000,000) divided into ten thousand (10,000) shares, of one hundred (100) dollars each. Three thousand (3,000) of these shares are to be sold for the present uses of the company, for the sum of fifty thousand dollars, ($50,000.) And we, the undersigned, do for value received, hereby mutually agree to purchase and take of the original proprietors, the number of shares set against our names, at the rate of fifty thousand dollars ($50,000) for three thousand shares, and that we will pay to the Treasurer of said company the sum so affixed, in such installments and at such times as shall be ordered by the trustees of the company, and the condition of this subscription is, that two thousand (2,000) shares of the capital stock shall be paid to trustees, to be held by them for the benefit of and subject to the direction of the company.

New York, February 24th, 1866.

(Signed) A. and L. B. Martin, one hundred and fifty shares.' and which paper was signed by other persons whose names are here omitted.

That said defendants signed and executed said agreement as aforesaid, and they became liable to pay to said plaintiff the sum of twenty-five hundred dollars, whenever the same should be called for, in accordance with the terms of said agreement."

The complaint also alleges that the trustees ordered at four different times installments of the subscription, of twenty-five per cent. each, to be paid to the treasurer, and that the defendants have only paid the first installment ordered, and "that said plaintiff has duly performed all the conditions in said agreement specified on its part to be performed." It is not made certain by the language of the complaint, whether at the time the defendants signed the contract on which suit is brought, the capital stock was owned by the plaintiff, or by "original proprietors" thereof. We therefore inquire whether in either view the complaint states facts sufficient to constitute a cause of action.

*First.* We assume that the plaintiff was the owner of the stock. It does not appear to have made any promise, or done, or become liable to do any act or thing. Possibly under the charter or by-laws of the company, the defendants would have become members of the corporation on the performance of their agreement, or perhaps the plaintiff could thereupon have been compelled to deliver them the number of shares of stock subscribed for; but if so, these are part of the facts constituting the plaintiff's cause of action, and should have been alleged. A promise for which there is no consideration can not be enforced at law.

It is not perceived how the payment of 2000 shares of stock to trustees " to be held by them for the benefit of and

subject to the direction of the company," could constitute a legal consideration for the defendants' promise. "Consideration," says Mr. Justice Patterson in *Thomas vs. Thomas*, 2 *Q. Bench*, 851, "means something which is of some value in the eye of the law moving from the plaintiff; it may be some benefit to the defendant, or some detriment to the plaintiff." It is held by some of the cases, that the consideration may move from a third party—but whether this is so, or not, we do not here determine. At any rate, it must be some benefit to the defendant, or detriment to the person from whom it moves, and of some value in the eye of the law. The trustees to whom this stock was to be paid, would be *pro hac vice*, the servants of the company, and their possesion its possession. The placing of stock in their hands, under such circumstances, and for such purpose, could be no benefit whatever to the defendants, nor could it be any greater injury, inconvenience or detriment to the plaintiff than the placing of it in the hands of any officer, or other servant of the company, for it was to remain at all times subject to the use or order of the company. It is true that the changing of the stock from the hands of one officer, or servant of the company, into the hands of another, or even the accepting and holding of the defendants' written agreement, may strictly be said to be an inconvenience or detriment to the plaintiff— but it is not in the eye of the law of any value. It is too shadowy a consideration to support a contract. But let it be supposed that the stock was owned by the "original proprietors," and not by the company, and we will inquire whether in that view the complaint states facts sufficient to constitute a cause of action. The stockholders do not appear to have done, or agreed to do anything, so far as the complaint shows; they did not deliver or agree to deliver the stock to the trustees. The allegation in the complaint of

performance on the part of the plaintiff, is not equivalent to an allegation that they performed, nor does it imply performance on their part. It does not appear that they would be under any obligation to deliver to the defendants the stock on payment therefor to the plaintiff. There seems to be some stress laid on the fact that *other persons* also signed the agreement to purchase and take stock; but it does not appear whether they signed before or after the defendants, nor whether they signed on the inducement or consideration that the defendants would sign.

Indeed it is not alleged that anything was done or promised, or that any liability was assumed by any person on account of, or relying on the signature or agreement of the defendants. The mere fact that others signed the paper, under such circumstances, does not make defendants liable. See 1 *Pars. on Contracts*, 452–5, *and cases cited in note.* The complaint, therefore, we think, fails to show any consideration for the defendants' agreement.

Order reversed.